IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Terrell McCoy, 256070, ) | Civil Action No. 9:09-2958-RMG-BM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| Amy Enloe, Nurse-Doctor; Cathy Jones, ) | **REPORT AND RECOMMENDATION** |
| Nurse Perry Correctional Institution; ) | |
| Deborah Murrell, Nurse Perry Corr. Inst.; ) | |
| Michael McCall, Warden Perry ) | |
| Correctional Inst.; Victoria Balogun, ) | |
| Nurse Perry Corr. Inst.; and South ) | |
| Carolina Department of Corrections ) | |
| ) | |
| Defendants. ) | |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate with the South Carolina Department of Corrections (SCDC), alleges violations of his constitutional rights by the named Defendants.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on April 13, 2010. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on April 14, 2010, advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. After receiving an extension of time, Plaintiff thereafter filed his own motion for summary judgment on June 17, 2010, to which the Defendants filed a response in opposition on June 33, 2010.



- 1 -

These motions are now before the Court for disposition.[1]

**Background and Evidence**

Plaintiff alleges in his verified complaint[2] that on July 20, 2009, he slipped and fell while taking a shower, severely damaging his right wrist and hand. Plaintiff alleges that he immediately informed the dorm supervisor (Sergeant Wessinger), who called medical officials. Plaintiff alleges that the Defendants Murrell and Balogun responded with a bag of ice around 6:20 p. m., but refused to examine his wrist and hand or send him to a hospital to determine if the wrist was broken. Plaintiff alleges that Murrell told the second shift supervisor[3] that she would see the Plaintiff after she finished handling the "pill line" in all four dorms, and that he was not thereafter escorted to medical by a yard officer until over one and half hours later. Plaintiff alleges that he was seen by the Defendant Balogun, who noticed his wrist was severely swollen and wrapped it in an Ace bandage. Plaintiff alleges that because both Murrell and Balogun were in a "rush" to go home, they never sent Plaintiff to the hospital to have his wrist examined or to have x-rays taken. Instead, Balogun sent Plaintiff back to the dorm.

Plaintiff alleges that early the following morning, July 21, 2009, he was removed

---

[1] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The parties have filed motions for summary judgment. As these motions are dispositive, this Report and Recommendation is entered for review by the Court.

[2] In this Circuit, verified complaints by pro se litigants are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.

[3] Plaintiff's injury occurred at 5:32 p.m., and the shift changed at 6:00 p.m. See Complaint, ¶ ¶ 1, 3.



from the general population and placed in segregation. Plaintiff alleges that late that morning (after he had been placed in segregation), he signed up for sick call because his wrist and hand were swollen and he was in serious pain. Plaintiff alleges, however, that his sick call request was denied on that day, as well as the following two days (July 22 and July 23), because Balogun could only see four people at a time out of over thirty inmates in segregation. Plaintiff alleges that "on 7/27 or 8/3/09" he was taken to the "Kirkland facility" for an x-ray. Plaintiff alleges that the x-ray examiner told him that all x-rays are sent to the prison where the inmate is being held, where it would be received by the Defendant Enloe.

Plaintiff alleges that he signed up for sick call again and saw the Defendant Jones on August 5, who noticed Plaintiff's wrist was severely swollen and told him she would bring him some medication for pain and refer him to see Enloe. Plaintiff alleges, however, than he never received any type of pain medication, nor did he see a physician, at which time he filed a "second grievance . . . .". Plaintiff alleges that on September 10, 2009, fifty-seven days after his injury, he finally saw Enloe "for the 1st time". Plaintiff alleges that Enloe told him that she had seen Plaintiff's x-ray and noticed an abnormal bone in his right wrist, and she sent Plaintiff to Kirkland to have a second x-ray taken on September 14, 2009. Plaintiff alleges that Enloe was aware of his injury back in July, but did not provide him with any type of care or pain medication until September 15, 2009, thereby allowing him to "suffer great body and mind pain".

Plaintiff alleges that on September 15, 2010 Enloe prescribed him some ibuprofen "which expired 10/15/09". Plaintiff alleges that when he signed up for sick call on October 16, his request was denied. Plaintiff alleges that he signed up for sick call again on October 20, at which time he was seen by Balogun, who informed him that she would give him medication and schedule him to see Enloe. Plaintiff alleges, however, that this was "never done". Plaintiff alleges that when

- 3 -



he then told the Defendant Jones on October 25 that his wrist was still swollen and that he was in serious pain, Jones showed a "hostile attitude" toward him, stated that she was busy, and walked off. Plaintiff alleges that when he signed up for sick call again on October 29, Balogun refused to see him even though she was "aware of the swollen . . . wrist and hand". Plaintiff further alleges that Enloe never gave him physical therapy or referred him to an outside physician for therapy. Finally, on November 1, a "Ms. Tippmen" observed Plaintiff's swollen wrist and gave him some ibuprofen and ice to relieve his swelling.

Plaintiff alleges that as of November 6, 2009[4] he was "still in serious pain", and was unable to participate in activities such as doing push ups or any type of sports. Plaintiff alleges that he filed a grievance, which was denied. Plaintiff alleges that the Defendants were deliberately indifferent to his serious medical injury and seeks monetary damages. See generally, Verified Complaint.

In support of summary judgment in the case, the Defendants have submitted an affidavit from Brenda Dash-Frazier, who attests that she is the Director of Health Information Resources at the South Carolina Department of Corrections. Dash-Frazier attests she has attached to her affidavit a copy of Plaintiff's medical records showing the care and treatment Plaintiff has received at the Department of Corrections from the time of his incarceration until the present. See generally, Dash-Frazier Affidavit, with attached Exhibit [Medical Records].

The Defendant Deborah Murrell has submitted an affidavit wherein she attests that she is a Nurse at the Perry Correctional Institution (where Plaintiff is housed), and that her duties include examining, treating, and providing medications for inmates. Murrell attests that she has no

---

[4] Plaintiff's complaint is dated November 9, 2009.



- 4 -

specific recollection of the Plaintiff, but has reviewed his medical records which reflect that she has seen the Plaintiff on two occasions since July 2009. Murrell attests that she saw the Plaintiff in sick call on November 6, 2009 for complaints about his wrist, at which time she noted that Plaintiff had an appointment scheduled with the Defendant Enloe for Monday, November 9. Murrell attests that she placed a notation in the computer as to whether Plaintiff could receive any other medication for pain, with Enloe responding that Plaintiff should take Motrin and Tylenol, which are available to inmates in the dorm. Murrell attests that she next saw the Plaintiff on December 29, 2009 for complaints of nervousness and stress, and that she referred him to the mental health counselor. Murrell attests that she took Plaintiff's vital signs, which were normal, and that he did not appear to be in any type of apparent distress.

Murrell attests that she did not see any additional indications in the medical records where she saw the Plaintiff, and has no independent recollection of seeing him on any other occasions. Murrell specifically attests that she does not recall seeing the Plaintiff on July 20, 2009, and that there is no indication in Plaintiff's medical records that she saw him on that date. With respect to Plaintiff's allegations in his complaint that he requested to be seen in sick call on July 21, July 22, and July 23, but was not seen, Murrell attests that there was a period of time when medical was only able to see a limited number of inmates in the Special Management Unit (SMU) each day due to security restraints, and that in July 2009 they had sick call four days per week in the SMU. Murrell attests that if an inmate signed up for sick call, it was possible he would not be seen that day, but would generally be seen the following day. Murrell attests that she does not recall any occasions where it was more than a day or possibly two before an inmate was seen after signing up for sick call.

Murrell attests that they would essentially review the inmate requests and would see



the inmates with the most acute complaints first.  Murrell further attests that although they only saw a limited number of inmates each day due to security restraints, that if an inmate had an acute or emergency situation they would be seen.  Murrell attests that she does not recall any occasion where she refused to see the Plaintiff or provide him medical care, and that in her opinion Plaintiff was provided appropriate medical care, and that at no time was she deliberately indifferent to any of Plaintiff's serious medical needs.  <u>See</u> <u>generally</u>, <u>Murrell Affidavit</u>.

The Defendant Cathy C. Jones has submitted an affidavit wherein she attests that she is a Nurse at the Perry Correctional Institution, with the same duties as Murrell.  Jones attests that she has no specific recollection of the Plaintiff, but has reviewed his medical records which show that she has seen the Plaintiff on three occasions since July 2009.  Jones attests that, according to Plaintiff's medical records, she saw him in sick call on August 21, 2009, at which time he stated that his wrist was still hurting.  Jones attests that she noted some swelling in the Plaintiff's wrist and his complaints of pain upon movement, and provided him with Chlorzoxazone for pain and referred him to Enloe for evaluation.  Jones attests that she saw the Plaintiff again on September 8, 2009 during sick call, at which time Plaintiff complained that he was still having pain in his wrist and requested to see Enloe.  Jones attests that she again provided Plaintiff with Chlorzoxazone for pain, and made a notation in Plaintiff's record for Enloe to review.

Jones attests that she next saw the Plaintiff on December 31, 2009, at which time he stated that the medication he had been given made him sick.  Jones attests that she informed Enloe, and Enloe discontinued Plaintiff on Naprosyn and placed him on Feldene, another pain medication. Jones attests that, to her knowledge, Plaintiff has not made any additional complaints of sickness or nausea since being placed on Feldene.  Jones also attests that she does not see any additional indications in the medical records where she saw the Plaintiff, and has no independent recollection



of seeing him on any other occasion. Jones specifically attests that she does not recall seeing the Plaintiff on July 20, 2009, and that there is no indication in his medical records that she saw him on that date. Jones attests that she does not recall any occasion where she refused to see the Plaintiff or provide him with medical care, and that in her opinion Plaintiff has been provided appropriate medial care while at PCI. See generally, Jones Affidavit.

The Defendant Amy Enloe has submitted an affidavit wherein she attests that she is a Nurse Practioner assigned to PCI, that she has seen the Plaintiff on several occasions since he has been at PCI, and that she has also reviewed Plaintiff's medical records. Enloe attests that, according to Plaintiff's medical records, he stated that he fell on July 20, 2009 while playing basketball and injured his wrist. Plaintiff was seen on July 20, 2009 by Nurse Balogun, with the medical records indicating that his right wrist was tender to touch and had poor range of motion, with Plaintiff stating that he had pain if he wiggled his fingers. Plaintiff had normal capillary refill, however, and the records indicate Balogun provided Plaintiff with an ice pack and as a precaution wrapped his wrist in an ace bandage in order to immobilize it. Balogun also provided Plaintiff with 400 mg. of Motrin to be given three times per day for three days and placed a reference in the computer for Enloe to review.

Enloe attests that she reviewed Balogun's note on July 21, 2009, and ordered that Plaintiff be sent to Kirkland Infirmary for an x-ray as soon as possible. Enloe attests, however, that based on her review of Plaintiff's records, there was no obvious deformity noted to his wrist, and though there was some swelling and subjective complaints of pain to palpation, it was not necessary that Plaintiff be transported to the emergency room at that time. Plaintiff was instead sent to the Kirkland Infirmary on July 27, 2009 at which time x-rays were performed on his wrist. Enloe attests



that the x-ray showed no fracture.

Enloe attests that according to Plaintiff's medical records, he was seen again by medical personnel on August 1, 2009 with continuing complaints of pain, at which time he was provided Motrin and instructed to keep his wrist elevated and use ice as needed. Plaintiff was to followup with medical personnel on Monday morning.[5] Enloe attests that Plaintiff was next seen by medical personnel on August 21, 2009, where he told Nurse Jones that he still had pain in his wrist. Plaintiff's medical records indicate that Jones noted there was some swelling in Plaintiff's wrist and complaints of pain upon movement, and that Jones provided Plaintiff with Chlorzoxazone for pain and referred him Enloe for evaluation. Jones thereafter saw Plaintiff again on September 8, 2009 at sick call, where he complained that he was still having pain in his wrist and wanted to see Enloe. Jones again provided Plaintiff with Chlorzoxazone for pain and the matter was forwarded to her [Enloe] for evaluation.

Enloe attests that she saw the Plaintiff on September 16, 2009, and that even though Plaintiff had previously been sent for an x-ray, which was negative, and she [Enloe] did not observe any gross abnormalities, she ordered that Plaintiff be sent for another x-ray as a precaution because he was still complaining of pain in his wrist. Enloe attests that Plaintiff was thereafter sent to the Kirkland Infirmary for x-ray on September 23, 2009, which again showed no fracture of the Plaintiff's wrist, but did show a possible fracture of his ring finger. Enloe attests that when inmates are sent to the Kirkland Infirmary for x-rays, she does not examine the actual x-rays but instead the x-rays are reviewed by a radiologist and she is provided the report prepared by the radiologist. Enloe attests that the radiologist's report states that Plaintiff had a possible fracture of his ring finger but

---

[5]August 1 was a Saturday.



that this had not been present when x-rays were completed on July 27, 2009. Enloe further attests that Plaintiff was complaining of pain in his wrist, not his finger, and that even if there was a fracture to his ring finger it would not have caused the pain in his wrist, which was where Plaintiff was complaining of pain.

Enloe attests that Plaintiff was next seen by medical personnel on October 20, 2009, by Nurse Balogun complaining about an ingrown toenail and fungal infection between his toes. Plaintiff also requested a stronger pain medicine for his right wrist, and he was prescribed 800 mg. Motrin at that time. Plaintiff was also provided medication for athletes foot, and was referred to see either her [Enloe] or the doctor concerning his ingrown toenail. Enloe attests that an appointment was scheduled for the Plaintiff to be seen by her on October 27, 2009, but that he could not be brought to the medical department at that time due to security issues.

Enloe attests that Plaintiff was seen again by medical personnel on November 1 for complaints of pain in his right wrist, and he was provided Motrin along with an ice pack. He was also scheduled to see Enloe with the next available appointment, which was November 6, 2009. Enloe attests, however, that on November 6, 2009 security was unable to bring him to the medical department on that date, and was instead seen in sick call by the Defendant Nurse Murrell. Plaintiff complained at that time about pain in his wrist. Murrell noted that Plaintiff had an appointment scheduled with Enloe for Monday, November 9, and placed a notation in the computer as to whether Plaintiff could receive any other medication for pain. Enloe attests that she reviewed that note, and instructed Plaintiff to take Motrin and Tylenol, which are available to inmates in the dorm. Enloe attests that she then saw the Plaintiff on November 9, 2009 for complaints of pain in his right wrist along with a fungal infection to his toenails. Enloe attests that, even though there were no gross



abnormalities and she had seen the Plaintiff twice for x-rays of his wrist, both of which have been normal, she referred Plaintiff to a Orthopedist for evaluation as a precaution since he had continuing complaints of pain. Enloe attests that Plaintiff was then seen by an orthopedic surgeon on December 21, 2009, who placed him in a splint and recommended Naprosyn, a pain medication. The orthopedic surgeon also reviewed Plaintiff's prior x-rays and recommended that additional x-rays be done in three months, but did not recommend any additional treatment of any kind. Enloe attests that Plaintiff was provided with the Naprosyn, and that she also requested and received approval for the follow up x-rays pursuant to the recommendation of the orthopedic surgeon.

Enloe attests that Plaintiff was next seen by medical personnel on December 29, 2009 for complaints of nervousness and stress, and was referred to the mental health counselor. Plaintiff was then seen again by medical personnel on December 31, 2009 for complaints that his medication was making him sick. Enloe attests that she discontinued the Naprosyn and placed Plaintiff on another medication, Feldene. Enloe attests that Plaintiff has not made additional complaints of sickness or nausea since being placed on Feldene. Enloe further attests that a follow up appointment has been scheduled for the Plaintiff with the orthopedic surgeon, but that Plaintiff cannot be informed of the date of the appointment in advance for security reasons.

Enloe attests that Plaintiff was seen by Nurse Murrell on February 18, 2010 complaining that his heart was hurting and that he wanted to see a specialist and to be placed on a cardiac diet. Plaintiff also stated that his liver was bothering him. Plaintiff was noted to be in no acute distress, and he made no complaints concerning his wrist on that date. Enloe further attests that laboratory blood tests, including liver functioning tests, have been done on the Plaintiff as a result of the medications he is taking for his toenail fungus, and that his liver function tests have been



normal and there is no indication that Plaintiff has any type of cardiac or liver problem.

Enloe attests that, in her opinion, Plaintiff has been provided appropriate medical care at PCI, and that at no time has she been deliberately indifferent to Plaintiff's serious medical needs. See generally, Enloe Affidavit.

The Defendant Victoria Balogun has submitted an affidavit wherein she attests that she is a Nurse at PCI, with the same duties as Nurse Jones and Nurse Murrell, and that while she does not have specific recollection of the Plaintiff, she has reviewed his medical records which indicate that she has seen the Plaintiff on two occasions since July 2009. Balogun attests that she saw the Plaintiff on July 20, 2009, with Plaintiff stating that he had fallen playing basketball and injured his wrist. Plaintiff's right wrist was swollen and tender to touch, he had poor range of motion, and stated that he had pain if he wiggled his fingers. Balogun attests that Plaintiff had normal capillary refill, and that she provide Plaintiff an ice pack and as a precaution wrapped his wrist in an ace bandage in order to immobilize it. She also provided Plaintiff with 400 mg of Motrin to be given three times per day for three days, and placed a reference in the computer for Enloe to review. Balogun attests that, according to Plaintiff's medical records, Enloe reviewed her note on July 21, 2009, and ordered that Plaintiff be sent to the Kirkland Infirmary for an x-ray. Balogun attests that there was no obvious deformity noted to Plaintiff's wrist, and though there was some swelling and subjective complaints of pain to palpation, in her opinion it was not necessary for Plaintiff to be transported to the emergency room at that time.

Balogun attests that, while she does not recall the specifics of that day and that it was possible that it was thirty minutes to an hour or more before she was able to see the Plaintiff, she would have seen the Plaintiff as quickly as possible after being notified of his complaint, but as this



was not an emergency situation she was likely seeing other patients. Balogun attests that she could not simply leave other scheduled patients unattended to examine Plaintiff when there was no emergency situation.

Balogun attests that she next saw the Plaintiff on October 20, 2009, at which time Plaintiff was complaining about an ingrown toenail and fungal infection between his toes. He also requested a stronger pain medication for his right wrist, and she provided Plaintiff with medication for his athletes foot and referred him to see either Enloe or a doctor concerning his ingrown toenail. Balogun notes that Plaintiff had also been provided and was taking 800 mg. of Motrin for pain to his wrist, and that as she referred Plaintiff to Enloe or the doctor for the ingrown toenail, they could also make a determination as to whether he needed additional pain medication. Balogun attests that she does not see any additional indications in Plaintiff's medical records where she saw the Plaintiff, and she has no independent recollection of seeing him on any other occasion. See generally, Balogun Affidavit [Signature line missing].

Finally, the Defendant Michael McCall has submitted an affidavit wherein he attests that he is the Warden at PCI, where he is responsible for the overall operation of the prison. McCall attests that he receives numerous requests from inmates each day on a variety of issues, and that while it is possible Plaintiff wrote to him or that he spoke with the Plaintiff, he has no recollection of speaking with the Plaintiff or receiving any correspondence from the Plaintiff concerning his medical care. McCall attests that he is not directly involved in the medical care provided to inmates, and has no first hand knowledge concerning the medical care provided to the Plaintiff. McCall attests that he relies on the trained medical personnel at PCI to provide proper medical care to all inmates, and that it is his understanding that Plaintiff had received appropriate medical care. See



generally, McCall Affidavit.

As attachments to his motion to summary judgment, Plaintiff has submitted a copy of a physician's transfer note or consultation dated December 21, 2009 (apparently completed by the orthopedic physician), reflecting the examination and recommendations provided by the orthopedic on that date, which include a wrist splint and follow up with x-rays in three months. Plaintiff was also provided another physician's transfer note or consultation dated April 5, 2010, apparently from a follow up at the orthopedic clinic, at which some mild swelling was noted. Although difficult to read, this consultation note apparently indicates evidence of [illegible] injury, with a recommendation for a follow up in three months. Plaintiff has also submitted a copy of the incident report from the date of his injury, noting that he complained that he had fallen while coming out of the shower, a copy of the Defendants' responses to Plaintiff's request to admit, copies of Plaintiff's grievances, and a copy of Plaintiff's health services medical summary for December 09 through January 10. Plaintiff has also provided copies of his x-ray results from July 27, 2009, with the findings being "[n]o fractures are identified. The joint spaces appear to be well-maintained", and the conclusion "no acute process is identified". Plaintiff has also provided a copy of the x-ray results from the x-ray performed September 23, 2009, which includes among its findings that "there is a questionable area noted involving the proximal phalanx of the fourth digit not seen on the previous examination . . . . this was not demonstrated on the previous examination of 7-27-09." The conclusion for that x-ray is as follows:

> There is a questionable fracture of the proximal phalanx of the ring finger although this could still just be the outline of the patient's cortex in this region or represent a fracture, the age of which though cannot be excluded. Clinical correlation is suggested.

Plaintiff has also provided a copy of what appear to be written health care procedures for



inmates and additional copies of the Defendants' affidavits. Finally, Plaintiff has submitted an affidavit wherein he essentially restates the allegations of his complaint, including in particular that he was not seen by a physician until December 21, 2009, when he should (according to the Plaintiff) have been sent to the emergency room on the date of his accident. See Plaintiff's Exhibits.

**Discussion**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after careful review and consideration of the evidence and arguments presented, the undersigned finds and concludes the Defendants are entitle to summary judgment in this case.

In order to proceed with a claim under § 1983 for denial of medical care, Plaintiff must present evidence sufficient to create a genuine issue of fact as to whether any named Defendant was deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106



- 14 -

(1976); Farmer v. Brennen, 511 U.S. 825, 837 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986); Wester v. Jones, 554 F.2d 1285 (4th Cir. 1977); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975); Belcher v. Oliver, 898 F.2d 32 (4th Cir. 1990). Plaintiff has failed to submit any such evidence. Rather, the evidence before this Court, including Plaintiff's own evidence, includes medical records showing that Plaintiff has received continuous and ongoing treatment for his medical complaints, with none of the information contained in these medical records supporting Plaintiff's claim of constitutionally inadequate medical care with respect to his wrist injury. As noted, Plaintiff's medical records show that he was seen on numerous occasions for his complaints, the x-rays taken of his wrist at the time reflected no injury to his wrist (including Plaintiff's own exhibits), and that Plaintiff received regular medications for pain and discomfort. Additionally, several registered nurses attest in affidavits that Plaintiff has received more than adequate medical treatment and care for his medical complaints, and the medical evidence before this Court clearly indicates that Plaintiff has not suffered any injury or aggravation of his condition as a result of the medical decisions made in his case.

In contrast to this medical evidence, Plaintiff has presented no evidence to show that any named Defendant was deliberately indifferent to his medical needs. Rather, Plaintiff only generally alleges in his complaint and affidavit that medical personnel refused to provide him with the treatment he desired, while making claims of non-treatment which are specifically refuted by the recorded medical evidence. Cf. Sylvia Dev. Corp. v. Calvert County, MD., 48 F.3d 810, 818 (4th Cir. 1995)[explaining that while the party opposing summary judgment is entitled to the benefit of inferences that can be drawn from the evidence, "[p]ermissible inferences must still be within the range or reasonable probability" and that ["[w]hether an inference is reasonable cannot be decided



- 15 -

in a vacuum; it must be considered in light of the competing inferences to the contrary" (internal quotation marks omitted)].

While Plaintiff may not agree with the extent and nature of the medical care he received with respect to this injury, he cannot simply allege in a conclusory fashion that he did not receive constitutionally adequate medical care or attention, otherwise provide no supporting evidence, and expect to survive summary judgment, particularly when the Defendants have submitted medical documents as well as affidavits from trained, licensed medical personnel which refute his claims. See Scheckells v. Goord, 423 F.Supp.2d 342, 348 (S.D.N.Y. 2006) (citing O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts are for."]); Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985)[Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim absent exceptional circumstances]; House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) ["Even though pro se litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"]; Green v. Senkowski, 100 Fed.Appx. 45 (2d Cir. 2004) (unpublished opinion) [finding that plaintiff's self-diagnosis without any medical evidence insufficient to defeat summary judgment on deliberate indifference claim]; Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. March 11, 1997) ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"], quoting Farmer v. Brennen, 511 U.S. 825, 837 (1994).



Plaintiff may, of course, pursue a claim in state court if he believes the medical care he received has generally been inadequate with respect to this claim. However, the evidence before the Court is insufficient to raise a genuine issue of fact as to whether any named Defendant was deliberately indifferent to his serious medical needs, the standard for a constitutional claim, and therefore Plaintiff's federal § 1983 medical claim with respect to this incident should be dismissed. See DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-203 (1989) [§ 1983 does not impose liability for violations of duties of care arising under state law]; Baker v. McClellan, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law duty of care]; Estelle v. Gamble, 429 U.S. 97, 106 (1976)["medical malpractice does not become a constitutional violation merely because the victim is a prisoner."]; see also Brooks v. Celeste, 39 F.3d 125 (6th Cir. 1994); Sellers v. Henman, 41 F.3d 1100 (7th Cir. 1994); White v. Napoleon, 897 F.2d 103, 108-109 (3d Cir. 1990); Smart v. Villar, 547 F.2d 112 (10th Cir. 1976) [affirming summary dismissal].

## **Conclusion**

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted**, that the Plaintiff's motion for summary judgment be **denied**, and that this case be **dismissed,** with prejudice.

The parties are referred to the Notice Page attached hereto.

                                      Bristow Marchant
                                      United States Magistrate Judge

September 30, 2010
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).